http://www.va.gov/vetapp16/Files4/1630424.txt

Citation Nr: 1630424 
Decision Date: 07/29/16 Archive Date: 08/04/16

DOCKET NO. 11-17 840 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Columbia, South Carolina

THE ISSUE

Entitlement to an increased rating for hard corns of the fourth and fifth toes with heavy calluses on the left foot, currently rated as noncompensable prior to October 6, 2009; 10 percent disabling from October 6, 2009, to January 12, 2010; 100 percent disabling from January 13, 2010, to February 28, 2010; and 10 percent disabling from March 1, 2010.

REPRESENTATION

Appellant represented by: The American Legion

WITNESS AT HEARING ON APPEAL

The Veteran

ATTORNEY FOR THE BOARD

T. J. Anthony, Associate Counsel

INTRODUCTION

The Veteran had active service from March 1972 to May 1978.

This matter is before the Board of Veterans' Appeals (Board) on appeal of a January 2010 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Columbia, South Carolina. The Board remanded this matter in November 2013.

In May 2012, the Veteran testified at a hearing before the undersigned Veterans Law Judge (VLJ) via video conference. A transcript of the hearing is associated with the record.

In a May 2011 rating decision, the RO increased the Veteran's rating for the service-connected left foot disability to 10 percent, effective from October 6, 2009, the date of the Veteran's claim for an increased rating, and additionally granted a temporary total disability rating, pursuant to 38 C.F.R. § 4.30, from January 13, 2010, to February 28, 2010, based on surgical treatment necessitating convalescence. As these increases do not represent the maximum schedular benefit, the Veteran's appeal was not abrogated, and the increased rating claim remains on appeal. AB v. Brown, 6 Vet. App. 35 (1993). Furthermore, as the claim for an increased rating was received October 6, 2009, the rating period currently on appeal is from October 6, 2008, one year prior to the date of receipt of the Veteran's claim for an increased rating. See 38 C.F.R. § 3.400(o)(2) (2015). As the May 2011 rating decision established an effective date for the increased rating of October 6, 2010, the date of the Veteran's claim, staged ratings have been created, and the issue before the Board is as stated on the title page. Hart v. Mansfield, 21 Vet. App. 505 (2007).

The Board is cognizant that a claim for a total rating based on individual unemployability due to a service-connected disability (TDIU), either expressly raised by the Veteran or reasonably raised by the record, is part of the claim for an increased rating. See Rice v. Shinseki, 22 Vet. App. 447 (2009). In this case, the record shows that the Veteran's service-connected left foot disability limits her ability to stand and walk for extended periods of time. The record also indicates that the Veteran continued working for much of the relevant rating period, and retired at some point during the rating period due to age requirements. See, e.g., March 2014 VA foot examination. The March 2014 VA foot examiner opined that the Veteran's service-connected left foot disability does not impact her ability to work. The Veteran has not argued, and the record does not otherwise reflect, that the disability renders her unable to secure or follow a substantially gainful occupation. Therefore, the Board concludes that a claim for a TDIU has not been raised.

FINDINGS OF FACT

1. For the rating period one year prior to October 6, 2009, the date of the Veteran's claim for an increased rating, it is not factually ascertainable that an increase in disability occurred.

2. From October 6, 2009 through January 12, 2010, the Veteran's service-connected left foot disability was manifested by no more than moderate symptoms.

3. On January 13, 2010, the Veteran underwent surgery for left hallux valgus that involved resection of the metatarsal head; the surgery has been medically attributed to the service-connected left foot disability; her period of convalescence following the surgery ended in February 2010.

4. From March 1, 2010, the Veteran's service-connected left foot disability was manifested by no more than moderate symptoms.

5. From March 1, 2010, although first clinically recorded on a March 2014 VA examination, the Veteran had a painful surgical scar of the left first toe relating to her service-connected left foot disability.

CONCLUSIONS OF LAW

1. The criteria for entitlement to an increased rating for hard corns of the fourth and fifth toes with heavy calluses on the left foot, currently rated as noncompensable prior to October 6, 2009; 10 percent disabling from October 6, 2009, to January 12, 2010; 100 percent disabling from January 13, 2010, to February 28, 2010; and 10 percent disabling from March 1, 2010, have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.321, 3.400(o)(2), 4.1, 4.3, 4.7, 4.21, 4.30, 4.71a, Diagnostic Code 5284 (2015).

2. The criteria for entitlement to a separate 10 percent rating, and no higher, for left hallux valgus have been met from March 1, 2010. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.321, 4.1, 4.3, 4.7, 4.21, 4.71a, Diagnostic Code 5280 (2015).

3. The criteria for entitlement to a separate 10 percent rating, and no higher, for surgical scar of the left foot have been met from March 1, 2010. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.321, 4.1, 4.3, 4.7, 4.21, 4.118, Diagnostic Code 7804 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VA's Duty to Notify and Assist

Pursuant to the Veterans Claims Assistance Act of 2000 (VCAA), VA has duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, and 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, and 3.326(a) (2015); see also Pelegrini v. Principi, 18 Vet. App. 112 (2004); Quartuccio v. Principi, 16 Vet. App. 183 (2002); Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006).

VA's duty to notify was satisfied by a letter dated in October 2009. See 38 U.S.C.A. §§ 5102, 5103, 5103A; 38 C.F.R. § 3.159; see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015).

The duty to assist the Veteran has also been satisfied in this case. The Veteran's service treatment records, identified private treatment records, and VA treatment records have been obtained and associated with the claim file. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. The Veteran was provided VA examinations in October 2009, April 2011, and March 2014, and a VA addendum opinion in February 2011 as to the service-connected left foot disability. The October 2009, April 2011, and March 2014 examiners considered the Veteran's reported symptomatology, examined the Veteran, and provided the medical information necessary to address the rating criteria in this case, to include statements as to the Veteran's functional loss due to the service-connected left foot disability and descriptions of the surgical scars associated with that disability. In addition, the clinician who provided the February 2011 VA addendum opinion provided appropriate rationale for the opinion provided. See generally Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008). Therefore, the Board finds the VA examinations and the VA addendum opinion to be adequate for decision-making purposes. See Barr v. Nicholson, 21 Vet. App. 303 (2007).

The Board acknowledges the Veteran's representative's statements in a May 2016 Informal Hearing Presentation that the most recent VA examination "is no longer contemporaneous, being from March 2014", and that "Where the record does not adequately reveal the current state of claimant's disability, fulfillment of the statutory duty to assist requires a contemporaneous medical examination-particularly if there is no additional medical evidence that adequately addresses the level of impairment of the disability since the previous examination." The representative also stated, "We ask the Board to consider whether a new [VA examination] is warranted in this case." The representative's statements suggest that another VA examination may be warranted due to the passage of time since the March 2014 VA examination, and because the record does not provide information as to the current state of the Veteran's service-connected left foot disability. Notably, the representative does not contend that the Veteran's service-connected disability has actually worsened in severity since the March 2014 VA examination, nor does the representative identify any outstanding medical records that would provide more current information as to the status of the Veteran's service-connected left foot disability and/or that would show such a worsening. The Board notes that mere passage of time is not a basis for requiring a new examination. See Palczewski v. Nicholson, 21 Vet. App. 174 (2007). In addition, other than the representative's general statements in May 2016, the record does not indicate that there has been a material change in the Veteran's service-connected left foot disability or that the current rating may be incorrect such that reexamination is required. See 38 C.F.R. § 3.327. As such, the Board finds that the examinations of record are adequate to adjudicate the Veteran's increased rating claim and no further examination is necessary.

There is no indication in the record that any additional evidence, relevant to the claim adjudicated in this decision, is available and not part of the record. See Pelegrini v. Principi, 18 Vet. App. 112 (2004). As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of the case, the Board finds that any such failure is harmless. See Mayfield v. Nicholson, 20 Vet. App. 537 (2006); see also Dingess/Hartman, 19 Vet. App. at 486; Shinseki v. Sanders/Simmons, 129 S. Ct. 1696 (2009).

Compliance with Board Remands

As noted in the Introduction, the Board remanded this case in November 2013. The November 2013 Board remand directed the Agency of Original Jurisdiction (AOJ) to obtained and associate with the record the Veteran's treatment records from the Ralph H. Johnson VA Medical Center in Charleston, South Carolina, from December 2010 to the present; provide the Veteran with a new VA examination; and then readjudicate the claim and issue a supplemental statement of the case, if warranted. Pursuant to the November 2013 Board remand, the AOJ obtained updated VA treatment records from the Ralph H. Johnson VA Medical Center; provided the Veteran with a new VA examination in March 2014 that was consistent with and responsive to the November 2013 Board remand directives and otherwise adequate for decision-making purposes; and readjudicated the claim in a May 2014 supplemental statement of the case. Accordingly, the Board finds that VA at least substantially complied with the November 2013 Board remand. See 38 U.S.C.A. § 5103A(b); Stegall v. West, 11 Vet. App. 268, 271 (1998); D'Aries v. Peake, 22 Vet. App. 97, 105 (2008). The Board notes that, following the November 2013 Board remand, the AOJ also sent the Veteran a letter in April 2014 asking her to identify any outstanding private treatment records. The Veteran did not respond to that letter.

Other Due Process Considerations

Also as noted in the Introduction, the Veteran was afforded a hearing before the undersigned VLJ in May 2012. At the hearing, the VLJ asked the Veteran specific questions concerning the symptoms of and treatment for her service-connected left foot disability. In addition, the VLJ solicited information as to the existence of any outstanding evidence. No pertinent evidence that might have been overlooked and that might substantiate the claim was identified by the Veteran or her representative. See Bryant v. Shinseki, 23 Vet. App. 488 (2010). Neither the representative nor the Veteran has suggested any deficiency in the conduct of the hearing. See Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015); Dickens v. McDonald, 814 F.3d 1359 (Fed. Cir. 2016). 

Legal Criteria

The Veteran seeks an increased rating for hard corns of the fourth and fifth toes with heavy calluses on the left foot. The Veteran's increased rating claim was received on October 6, 2009. See VA Form 21-526, Statement in Support of Claim, received in October 2009. Therefore, the relevant rating period is from October 6, 2008, one year prior to receipt of the claim, through the present. See 38 C.F.R. § 3.400(o)(2). The Veteran's service-connected left foot disability is currently rated as noncompensable prior to October 6, 2009; 10 percent disabling from October 6, 2009, to January 12, 2010; 100 percent disabling from January 13, 2010, to February 28, 2010; and 10 percent disabling from March 1, 2010, under 38 C.F.R. § 4.71a, Diagnostic Code 5299-5284, as an unlisted condition analogous to a foot injury. The temporary total disability rating from January 13, 2010, to February 28, 2010, was granted under the provisions of 38 C.F.R. § 4.30 based on the need for convalescence following left foot surgery the Veteran underwent on January 13, 2010.

Disability ratings are determined by the application of VA's Schedule for Rating Disabilities (Schedule), which is based on the average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. Pertinent regulations do not require that all cases show all findings specified by the Schedule, but that findings sufficient to identify the disease and the resulting disability and, above all, coordination of the rating with impairment of function will be expected in all cases. 38 C.F.R. § 4.21; see also Mauerhan v. Principi, 16 Vet. App. 436 (2002).

Where there is a question as to which of two ratings shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise the lower rating will be assigned. 38 C.F.R. § 4.7.

The rating of the same disability under various diagnoses is to be avoided. 38 C.F.R. § 4.14. Both the use of manifestations not resulting from service-connected disease or injury in establishing the service-connected rating, and the rating of the same manifestation under different diagnoses are to be avoided. Id.; Esteban v. Brown, 6 Vet. App. 259 (1994).

The Board will consider whether separate ratings may be assigned for separate periods of time based on facts found, a practice known as "staged ratings," in claims for increased ratings. Hart, 21 Vet. App. at 519.

Under 38 C.F.R. § 4.71a, Diagnostic Code 5284, provides ratings for other foot injuries not considered under the other diagnostic codes relating to the foot. Under Diagnostic Code 5284, a 10 percent rating is warranted for moderate other foot injuries; a 20 percent rating is warranted for moderately severe other foot injuries; and a 30 percent rating is warranted for severe other foot injuries. Diagnostic Code 5284 also provides that other foot injuries with actual loss of use of the foot are to be rated as 40 percent disabling.

Words such as "moderate," "moderately severe," and "severe" are not defined in the Schedule. Rather than applying a mechanical formula, the Board must evaluate all of the evidence to the end that its decisions are "equitable and just." 38 C.F.R. § 4.6. Use of terminology such as "severe" by VA examiners and others medical clinicians, although evidence to be considered by the Board, is not dispositive of an issue. All evidence must be evaluated in arriving at a decision regarding an increased rating. 38 C.F.R. §§ 4.2, 4.6.

The Board notes that the March 2014 VA examiner opined that the Veteran's left foot arthritis, which has been confirmed by X-ray imaging, is at least as likely as not to have been caused or aggravated by her January 2010 surgery on the great toe. In the February 2011 VA addendum opinion, another VA examiner opined that it is as likely as not that the Veteran's January 2010 surgery was related to her in-service complaints of corns on the fourth and fifth toes. As such, the record shows that the Veteran has arthritis associated with the service-connected left foot disability. Under 38 C.F.R. § 4.71a, Diagnostic Code 5003, degenerative arthritis is to be rated on the basis of limitation of motion under the appropriate Diagnostic Codes for the specific joint or joints involved. If noncompensable limitation of motion is demonstrated, a 10 percent rating is assigned for each major joint or group of minor joints affected. In the absence of any limitation of motion, a 10 percent rating is warranted for involvement of two or more major joints or two or more minor joint groups, and a 20 percent rating is warranted for involvement of two or more major joints or two or more minor joint groups with occasional incapacitating exacerbations. 38 C.F.R. § 4.71a, Diagnostic Code 5003. For the purpose of rating disability from arthritis, multiple involvements of the interphalangeal, metatarsal, and tarsal joints of the lower extremities are considered groups of minor joints, ratable on a parity with major joints. 38 C.F.R. § 4.45.

In addition, the January 2010 surgery involved operation of a left foot hallux valgus. As the surgery has been medically attributed to the service-connected hard corns of the fourth and fifth toes with heavy calluses on the left foot, 38 C.F.R. § 4.71a, Diagnostic Code 5280, relating to hallux valgus, is applicable. Under Diagnostic Code 5280, a maximum 10 percent rating is warranted for severe hallux valgus, if equivalent to amputation of great toe, or hallux valgus which has been operated upon with resection of the metatarsal head.

The record also shows that the Veteran has surgical scars on her left foot that have been medically associated with the service-connected left foot disability. Scar disabilities not of the head, face, or neck are rated under 38 C.F.R. § 4.118, Diagnostic Codes 7801 to 7805. Diagnostic Code 7801 provides a 10 percent rating for deep and nonlinear scars measuring at least 6 square inches but less than 12 square inches, and higher ratings for deep and nonlinear scars with greater areas up to a maximum 40 percent rating. Diagnostic Code 7802 provides a maximum 10 percent rating for scars that are superficial, nonlinear, and have areas or an area of 144 square inches or greater. Diagnostic Code 7804 provides a 10 percent rating for one or two unstable or painful scars, a 20 percent rating for three or four unstable or painful scars, and a maximum 30 percent rating for five or more unstable or painful scars. Diagnostic Code 7805 provides that any disabling effects of other scars (including linear scars), and other effects of scars rated under Diagnostic Codes 7800, 7801, 7802 and 7804, not considered in a rating provided under Diagnostic Codes 7800 to 7804, are to be rated under an appropriate Diagnostic Code.

The Veteran's temporary total disability rating from January 13, 2010, to February 28, 2010, was granted under the provisions of 38 C.F.R. § 4.30. Under 38 C.F.R. § 4.30, a total disability rating will be assigned without regard to other provisions of the rating schedule when it is established by report at hospital discharge that a veteran underwent surgery necessitating at least one month of convalescence. The rating may be granted for a period of 1, 2, or 3 months from the first day of the month following such hospital discharge or outpatient release. Convalescence is "the stage of recovery following an attack of disease, a surgical operation, or an injury." Felden v. West, 11 Vet. App. 427, 430 (1998) (citing Dorland's Illustrated Medical Dictionary). Recovery is "the act of regaining or returning toward a normal or healthy state." Id. (citing Webster's Medical Desk Dictionary).

Summary of the Relevant Evidence

At the October 2009 VA examination, the Veteran reported experiencing left foot pain every day for most of the day. The pain increases with shoe wear and is located on the fifth and fourth toe and at the first toe MTP joint. She has flares in the pain in the first MTP joint multiple times per day for a few minutes each instance. She takes her shoe off when the pain flares. The Veteran also had a painful corn on the fourth and fifth toe, and a painful ganglion on top of the foot medial aspect. She endorsed swelling of the left foot and use of over-the-counter shoe inserts, but denied use of a brace, cane, crutch, or special shoes. To help with the pain, she tries to wear open-toe shoes or soft shoes, but cannot do so when she goes to work. She also uses Tylenol, which helps, and wears larger shoe sizes. She indicated that she was working fulltime and had not missed any work days in the previous year due to the feet except for doctor's appointments. She reported that she is unable to walk more than 10 minutes and is unable to stand more than 30 minutes. On examination, she walked with a normal gait using no assistive devices. She had pain to palpation on the first MTP joint and also on the fourth and fifth toes of the left foot. She also had pain to the top of the foot and calluses on her heels, the medial aspect of the MTP joint of her great toe, and the dorsal surfaces of the fourth and fifth toes. Her ankle reflex was 2+. She had a scar on the dorsum of the fifth toe, which measured 2 cm. by 1 mm; had no erythema, edema, or keloid formation; and was not painful. There was no limitation of motion or function due to the scar. The Veteran's left first MTP joint was enlarged, and she had lateral deviation of 20 degrees on the great toe on the left foot. Her sensation was normal to the foot. There was no pain on range of motion of the ankle. The examiner opined that the Veteran does not have additional limitation in the left foot due to pain, fatigue, weakness, or lack of endurance following repetitive use. An X-ray of the left foot taken in conjunction with the October 2009 VA examination revealed mild osteoarthritis of the left foot and moderate calcaneal spurring.

Private treatment records show that, on January 13, 2010, the Veteran underwent a bunionectomy with first metatarsal osteotomy of the left foot and hammertoe correction of the fourth and fifth toes of the left foot. The operative report for the procedure indicates that it involved resection of the medial eminence of the first metatarsal head, followed by osteotomy through the medial aspect of the first metatarsal head. Followup notes reflect that on January 26, 2010, the Veteran indicated she was doing "very well" and had no complaints. She had satisfactory range of motion at the left first MTP joint and no edema or erythema. On February 15, 2010, she again was doing "very well" with no complaints. She had no edema of significance, no tenderness, and satisfactory range of motion at the first MTP joint. Her treatment plan was to begin wearing regular shoes, as tolerated, and return in one month. Notes dated later in February 2010 indicate that the Veteran returned to work, although she reported swelling, stiffness, aching, and reduced sensation in the left foot. In March 2010, the Veteran reported feeling as though the left hallux was not purchasing the supporting surface. The attending physician noted that the left hallux indeed was not purchasing the supporting surface, but noted, "There is potential for it to do so" and assessed the Veteran's condition as "normal postop." The Veteran was instructed to begin range-of-motion exercises in a more strenuous fashion.

In April 2010, the Veteran reported continued left foot pain to VA treatment providers. On physical examination, she had several well-healed scars over the left foot, exhibited swelling medially along the left first toe and fourth toes, and was tender to touch on the left foot. In addition, her first toe did not contact the floor when put flat. She had normal gait and coordination.

In September 2010, she had a VA podiatry consultation. At the consultation, the Veteran reported that her pain was gone, but that her great toe did not touch the ground and the fourth toe remained swollen. On examination, the Veteran's sensation was intact. She had well-healed surgical scars at the first MPT joint, the fourth toe and the fifth toe. She had mild edema of the fourth toe, and the hallux was slightly elevated in plane with the other toes. X-rays of the left foot showed mild osteoarthritic changes of the first MTP joint and of multiple IP joints of the foot and moderate calcaneal spurs. The Veteran's treatment plan included use of special inserts and range-of-motion exercises.

In October 2010, she continued to have swelling of the fourth toe. She was able to ambulate barefoot, and seemed to be weight bearing on the left second toe. The Veteran had little motion of the great toe and no motion of the fourth toe. The physical therapist noted that the fourth toe "Feels like it is fused." In December 2010, the Veteran reported that the fourth toe continued to stay swollen and would not bend, but did not hurt. On examination, her feet were unchanged in appearance. Her sensation was intact, and her surgical scars were well healed. She had mild edema and no motion in the fourth toe. The hallux was slightly elevated in plane with the other toes and had limited plantarflexion. The Veteran was instructed on supportive shoes.

In February 2011, a VA examiner provided an addendum opinion in which she summarized the Veteran's in-service left foot complaints, to include complaints of corns on the fourth and fifth toes. The examiner opined that the Veteran's "recent surgery . . . for hammertoe and bunionectomy on the left foot is as likely as not 50-50 probability related to the multiple complaints on active duty service for the left foot."

At the April 2011 VA examination, the Veteran reported left foot symptoms of pain, weakness, fatigability, and lack of endurance while standing and walking, and swelling while standing, while walking, and at rest. The Veteran did not report flare-ups in her foot joint disease, and estimated that she can stand up to one hour, but is unable to walk more than a few yards. On examination, there was no evidence of swelling, instability, weakness, or abnormal weight bearing in the left foot. However, there was evidence of painful motion and tenderness. The first toe and fifth toes were painful with movement. The examiner opined that the Veteran's foot pain impacts her ability to lift and carry. She also opined that the Veteran's service-connected left foot disability has severe effects on her ability to participate in recreation and prevents her from participating in sports. Additionally, the disability has moderate effects on her ability to perform chores, shop, exercise, travel, and drive; and mild effects on her ability to dress herself.

Private treatment records show that, in October 2011, the Veteran reported pain in the left second toe with progressive hammertoe formation. The Veteran was given an injection, and advised to apply ice to the affected area. The Veteran was given another injection in January 2012. In April 2012, the Veteran reported considerable pain in the left foot. She was instructed to undergo a MRI of the left foot. In May 2012, the Veteran reported continued difficulties with standing and walking, pain moving through the foot and ankle up the leg, and inability to wear certain types of shoes. Examination revealed well-healed surgical incisions, interdigital maceration, and no ecchymosis, erythema, edema, or infections. The Veteran was informed that retained hardware is a very probable cause for her continued pain and discomfort and limited range of motion. Further surgical intervention was discussed, but the Veteran indicated that she wanted to avoid any additional surgery on her feet.

At the May 2012 Board hearing, the Veteran testified that she could walk for twenty to thirty minutes and stand for twenty to thirty minutes, and that, once she reaches these limits, she must sit and prop up her foot and/or take her shoe off the left foot. She also reported difficulty using stairs, and that she shifts weight onto her right foot. Additionally, she has been told to wear flat shoes. She further reported that her recreation activities are limited to those which can be done while sitting. She has a pedicure once per month and uses a stone on her foot when she showers.

August 2012 VA treatment records show that the Veteran was retiring that month, and that she was expecting to travel with her husband out of state from the beginning of September through mid-November.

At the March 2014 VA examination, the Veteran reported pain in the left foot and ankle. On examination, the Veteran had hammertoes at the second and third toes of the left foot, hallus valgus with resection of the metatarsal head in the left foot, and hallux rigidus of the left foot. The examiner also noted that the Veteran has degenerative arthritis of the left foot, confirmed with X-rays. In the left foot, the Veteran had no edema; full range of motion in the ankles and toes except for the seconds and third toes, which are hammertoes; and tenderness to palpation of the dorsum. The Veteran also showed evidence of recent shaving of calluses on the plantar surface of the forefoot. She had no corns. She had an 8 cm. by 1 mm. nontender, but painful scar on the left great toe and a 1 cm. by 1 mm. nontender and nonpainful scar on the fifth toe. The examiner characterized the current level of severity of the service-connected left foot disability as "moderate" based on the Veteran's history, the in-person physical examination, and reviewing past X-rays of the Veteran's feet. The examiner indicated that the repeated motion of the left ankle or prolonged weight bearing will result in decreased range of motion because the forefoot gets tired and the left foot arthritis is aggravated. In addition, the Veteran may experience functional loss due to fatigue and pain if she overuses the foot, but that such functional loss results in difficulty using her foot, such as in standing or walking, and not in additional loss of motion. The Veteran did not have ankylosis and walked without a limp. The examiner also opined that the Veteran's left foot arthritis is separate and distinct from the service-connected left foot disability, but that the arthritis is at least as likely as not to have been caused or aggravated by the residuals of the surgery on the great toe. Furthermore, the Veteran had no baseline level of severity for the arthritis as X-rays dating prior to the surgery showed no arthritis.

Analysis

As explained in detailed below, in consideration of the relevant statutes and regulations and the relevant facts of the case, the Board finds that the Veteran was not entitled to a compensable rating prior to October 6, 2009, or a rating in excess of 10 percent under 38 C.F.R. § 4.71a, Diagnostic Code 5284, at any time during the rating period other than during the period from January 13, 2010, to February 28, 2010, during which time she was entitled to a temporary total disability rating due to convalescence following her left foot surgery. The Board further finds that the Veteran was also not entitled to extension of the temporary total disability rating granted from January 13, 2010, to February 28, 2010. However, from March 1, 2010, the date following the 100 percent convalescence rating for the Veteran's left foot surgery, which the February 2011 VA examiner medically attributed to the service-connected left foot disability, the Veteran was entitled to a separate 10 percent rating under 38 C.F.R. § 4.71a, Diagnostic Code 5280, for hallux valgus. In addition, from March 1, 2010, the Veteran was entitled to a separate 10 percent rating under 38 C.F.R. § 4.118, Diagnostic Code 7804, for a painful scar, although not clinically recorded until VA examination on March 14, 2014.

As to rating period prior to October 6, 2009, an increased rating may be granted where it is factually ascertainable that an increase in disability occurred during that period. See 38 C.F.R. § 3.400(o)(2). In this case, there is no evidence of record dated during the period from October 6, 2008, through October 5, 2009, showing that the service-connected left foot disability was at least moderate in severity or that the criteria for a compensable rating under any of the diagnostic codes other than Diagnostic Code 5284 relating to disabilities of the foot were met or approximated. Accordingly, it is not factually ascertainable that an increase in disability occurred during that period such that a compensable rating may be granted for the service-connected left foot disability during that period. See 38 C.F.R. § 3.400(o)(2).

As to the 10 percent rating under 38 C.F.R. § 4.71a, Diagnostic Code 5284, from October 6, 2009, the Board finds that the Veteran's service-connected left foot disability was manifested by no worse than moderate symptoms throughout the rating period other than the period from January 13, 2010, to February 28, 2010. Specifically, throughout the rating period, the Veteran reported left foot symptoms of pain, weakness, fatigability, lack of endurance, and swelling. She also had limited motion of the toes on examination. The symptoms limited her ability to stand and walk for extended periods and her ability to use stairs. However, the Veteran was able to work through at least some of the rating period, and tend to her activities of daily living. The VA treatment records also reflect that the Veteran was able to travel with her spouse during the rating period. The March 2014 VA examiner indicated that the condition severely limits her ability to engage in recreation and prevents her from engaging in sports. Indeed, the Veteran testified at the May 2012 Board hearing that she limits her recreation to sedentary activities such as reading and watching television. However, the examiner also indicated that the condition has only a mild to moderate effect on her ability to perform chores, shop, exercise, travel, drive, and dress herself. In addition, the examiner opined that the overall severity of the service-connected left foot disability is moderate. Although the examiner's use of that term is not dispositive of the issue, the Board finds it to be persuasive in view of the other evidence of record and concludes that the Veteran's service-connected left foot disability was moderate in severity throughout the rating period, aside from the period from January 13, 2010, to February 28, 2010. As the Veteran's service-connected left foot disability was manifested by no worse than moderate symptoms throughout the rating period, she was not entitled to a rating in excess of 10 percent under Diagnostic Code 5284 at any time.

As to the temporary total disability rating granted from January 13, 2010, to February 28, 2010, the Board finds that the record shows that the Veteran's period of convalescence following the January 13, 2010 left foot surgery did not extend past February 28, 2010. Specifically, as noted above, the private treatment records show that in February 2010 the Veteran reported doing "very well" and had no complaints. In addition, she had no edema of significance, no tenderness, and satisfactory range of motion at the first MTP joint. Her treatment plan was to begin wearing regular shoes, as tolerated, and return in one month. She returned to work that month. Although she continued reporting swelling, stiffness, and other left foot symptoms later in February and thereafter, such complaints were similar to those made prior to the surgery and did not prevent the Veteran from performing her normal activities of daily living, to include going to work. As such, the record shows that the Veteran returned to her normal state in February 2010, and did not require convalescence beyond February 28, 2010. See Felden, 11 Vet. App. at 430. Accordingly extension of the total rating based on the need for convalescence following surgery beyond February 28, 2010, is not warranted. See 38 C.F.R. § 4.30.

As to a separate 10 percent rating under 38 C.F.R. § 4.71a, Diagnostic Code 5280, the record shows that, on January 13, 2010, the Veteran underwent surgery for hallux valgus and that the surgery involved resection of the metatarsal head. Therefore, the Veteran met the requirements for a separate 10 percent rating under Diagnostic Code 5280 from January 13, 2010, the date of the surgery. However, the Board finds that as the Veteran was assigned a 100 percent convalescence rating from January 13, 2010 through February 28, 2010, assignment of a separate 10 percent rating for that period would constitute pyramiding. 38 C.F.R. § 4.414. As such, a separate 10 percent rating is assigned for hallux valgus from March 1, 2010. Further, the record does not show that the Veteran met or approximated the criteria for a separate compensable rating under Diagnostic Code 5280 prior to January 13, 2010. Specifically, prior to January 13, 2010, the Veteran was diagnosed with left hallux valgus, but the condition was not severe and equivalent to amputation of the great toe. Rather, the evidence of record dated during the rating period prior to January 13, 2010, shows that the Veteran reported left foot pain for which she took Tylenol. She also dealt with the pain by wearing open-toed or soft shoes and wearing larger sized shoes. Although she was limited in her ability to stand and walk for extended periods, she was able to walk without an assistive device, was working fulltime, and had not missed any work days in the previous year due to the left foot condition. Thus, the left hallux valgus was not severe and equivalent to amputation of the great toe, and a separate compensable rating was not warranted under Diagnostic Code 5280 prior to the January 13, 2010 left foot surgery.

As to the separate 10 percent rating under 38 C.F.R. § 4.118, Diagnostic Code 7804, the record shows that, at the March 14, 2014 VA examination, the Veteran's surgical scar on the left great toe was painful. Under Diagnostic Code 7804, a 10 percent rating is warranted for one painful scar. The record does not show that the Veteran's surgical scars were painful at any time prior to the March 2014 VA examination. Specifically, the Veteran's scar was not painful at the October 2009 VA examination. Her scars are described as "well-healed" in the medical treatment records. However, although the painful surgical scar was not clinically recorded until the March 14, 2014 VA examination, it has been shown to be the result of the January 13, 2010 surgery, and as such, in existence since then. Nevertheless, the Board finds that it would constitute pyramiding to assign a separate 10 percent rating for the painful scar during the period in which she was assigned a temporary total convalescence rating from January 13, 2010 through February 28, 2010. 38 C.F.R. § 4.14. As such, the record does not show that the criteria for a compensable rating under 38 C.F.R. § 4.118, Diagnostic Code 7804, were met or approximated prior to March 1, 2010, the day following the temporary total rating for convalescence following the surgery. The record also does not show that the Veteran was entitled to a compensable rating at any time during the rating period under the other diagnostic codes relating to scars not of the head, face, or neck. In particular, the records does not show that the Veteran's scars were deep and nonlinear, had an area of 144 square inches or greater, or had any other effects. See 38 C.F.R. § 4.118, Diagnostic Codes 7801, 7802, and 7805.

The Board has considered whether the Veteran is entitled to a higher or separate rating under 38 C.F.R. § 4.71a, Diagnostic Code 5003, based on her arthritis of the left foot, which the March 2014 VA examiner opined was at least as likely as not medically attributable to the Veteran's January 2010 left foot surgery. The Board finds no such higher or separate rating is warranted because Diagnostic Code 5003 provides ratings based on pain and limited motion. The Veteran's compensable rating under 38 C.F.R. § 4.71a, Diagnostic Code 5284, already contemplates such symptoms. Accordingly, the awarding of a separate compensable rating under Diagnostic Code 5003 based on the same symptoms would constitute impermissible pyramiding. See 38 C.F.R. § 4.14; Esteban, 6 Vet. App. 259. Furthermore, the criteria for a higher rating of 20 percent under Diagnostic Code 5003 have not been met or approximated because the record does not show that the Veteran has and occasional incapacitating exacerbations of her left foot arthritis.

The Board has also considered whether the Veteran is entitled to a higher or additional ratings under the other diagnostic codes pertaining to disabilities of the foot. Here, Diagnostic Codes 5276, 5277, 5278, 5279, and 5283 are not for application because the record does not show that the Veteran has been diagnosed with acquired flatfoot, bilateral weak foot, acquired claw foot, anterior metatarsalgia, or malunion or nonunion of the tarsal or metatarsal bones. Diagnostic Code 5281 is not for application because, although the March 2014 VA examiner indicated that the Veteran has hallux rigidus, Diagnostic Code 5281 directs that the condition is to be rated as hallux valgus, and the Veteran already is herein granted a rating under Diagnostic Code 5280 for hallux valgus. In addition, the Veteran's hallux rigidus has not been separately service connected or medically attributed to the service-connected left foot disability. Diagnostic Code 5282 is not for application because, although the Veteran has been diagnosed with hammertoes of the left foot, the condition does not warrant separate service connection as Diagnostic Code 5282 provides for a compensable rating only where there is involvement of all toes of foot. In this case the record shows that only some of the Veteran's toes of the left foot are hammertoes.

The Board has further considered whether the Veteran is entitled to referral for assignment of a greater level of compensation on an extra-schedular basis for the service-connected left foot disability. Ordinarily, the Schedule will apply unless there are exceptional or unusual factors which would render application of the Schedule impractical. See Fisher v. Principi, 4 Vet. App. 57, 60 (1993). According to the regulations, an extra-schedular disability rating is warranted based upon a finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization that would render impractical the application of the regular schedular standards. See Fanning v. Brown, 4 Vet. App. 225, 229 (1993).

Under Thun v. Peake, 22 Vet App 111 (2008), there is a three-step inquiry for determining whether a veteran is entitled to an extra-schedular rating. First, the Board must determine whether the evidence presents such an exceptional disability picture that the available schedular rating for that service-connected disability is inadequate. Second, if the schedular rating does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the Board must determine whether the claimant's disability picture exhibits other related factors such as those provided by the regulation as "governing norms." Third, if the rating schedule is inadequate to evaluate a veteran's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether, to accord justice, the Veteran's disability picture requires the assignment of an extra-schedular rating.

With respect to the first prong of Thun, the evidence in this case does not show such an exceptional disability picture that the available schedular ratings for the service-connected left foot disability are inadequate. A comparison between the level of severity and symptomatology of the Veteran's service-connected left foot disability with the established criteria found in the Schedule for that disability shows that the rating criteria reasonably describe the Veteran's disability level and symptomatology, as discussed above. Specifically, the Veteran has reported that the service-connected left foot disability manifests in pain, weakness, fatigability, and lack of endurance while standing and walking, and swelling while standing, while walking, and at rest. She has indicated that such symptoms limit her ability to be active and to ambulate. On examination, she has demonstrated limited motion and objective signs of pain. The rating schedules for all musculoskeletal disabilities contemplate such functional loss, including that caused by pain, stiffness, and limitation of range of motion. 38 C.F.R. § 4.40; Mitchell, 25 Vet. App. at 37. In this particular case, the Veteran has been awarded separate ratings under Diagnostic Codes 5280, 5284, and 7804, which address her hallux valgus and its associated surgical resection of the metatarsal head; pain and other symptoms associated with the hard corns of the fourth and fifth toes with heavy calluses; and the painful surgical scar. The Board concludes that the symptoms experienced by the Veteran are not considered exceptional or unusual and any functional loss has been adequately considered under the schedular rating criteria. Furthermore, the Schedule provides for higher and/or additional disability ratings for additional and more severe symptoms, but the record does not demonstrate that the Veteran is entitled to such higher or additional ratings. The Board acknowledges that the Veteran's disability has an impact on employment. However, the symptoms experienced by the Veteran are not considered to be exceptional or unusual and are taken into account by her current schedular rating. Therefore, referral for extra-schedular consideration is not warranted. Thun, 22 Vet. App. 111.

Finally, the Board notes that under Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a Veteran may be awarded an extra-schedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. However, in this case, after applying the benefit of the doubt under Mittleider v. West, 11 Vet. App. 181 (1998), there are no additional service-connected disabilities that have not been attributed to a specific service-connected condition. Accordingly, this is not an exceptional circumstance in which extra-schedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions.

The Board acknowledges the Veteran's contentions that she is entitled to higher ratings for the service-connected left foot disability. The Veteran is competent to report symptoms such as pain and limited motion. See Layno v. Brown, 6 Vet. App. 465, 470 (1994). The Veteran is also credible in her belief that she is entitled to higher ratings. However, in assigning disability ratings, the Board relies upon the competent, probative opinions provided by the medical professionals and on the objective medical evidence of record rather than on the Veteran's lay assertions. See Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011); Buchanan v. Nicholson, 451 F.3d 1331, 1336-37 (2006). The medical professionals' opinions are probative because the professionals have the knowledge and expertise necessary to rate disabilities of the musculoskeletal system, and because they are based on a review of the record, on an in-person examination of the Veteran, or both. They are thorough and provide enough detail to rate the Veteran under the relevant rating criteria, as discussed in detail above. See Prejean v. West, 13 Vet. App. 444, 448-9 (2000) (the thoroughness and detail of a medical opinion is a factor in assessing the probative value of the opinion). The Veteran has not been shown to have the requisite knowledge or skill. When considered in conjunction with the relevant rating criteria, the probative evidence supports a finding that ratings higher than or in addition to those assigned previously and herein are not warranted for the service-connected left foot disability.

In summary, the Board finds that the Veteran is not entitled to a compensable rating for the service-connected left foot disability prior to October 6, 2009, the date of her claim for an increased rating. In addition, she is entitled to no higher than a 10 percent rating under Diagnostic Code 5284 from October 6, 2009, aside from the temporary total disability rating granted from January 13, 2010, to February 28, 2010. Furthermore, she is not entitled to an extension of the temporary total disability rating provided from January 13, 2010, to February 28, 2010. However, she is entitled to a separate 10 percent rating under Diagnostic Code 5280 from March 1, 2010, for hallux valgus. In addition, she is entitled to a separate 10 percent rating under Diagnostic Code 7804 from March 1, 2010 for a painful surgical scar on the left foot. To the extent that the Veteran seeks ratings for the service-connected left foot disability higher than or in addition to those provided herein, the preponderance of the evidence is against the claim, the benefit-of-the-doubt doctrine is not for application, and the claim must be denied. 38 U.S.C.A. § 5107(b); see also Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

ORDER

Entitlement to an increased rating for hard corns of the fourth and fifth toes with heavy calluses on the left foot, rated as noncompensable prior to October 6, 2009; 10 percent disabling from October 6, 2009, to January 12, 2010; 100 percent disabling from January 13, 2010, to February 28, 2010; and 10 percent disabling from March 1, 2010, is denied.

Entitlement to a separate 10 percent rating, and no higher, for left hallux valgus is granted from March 1,, 2010, subject to controlling regulations applicable to the payment of monetary benefits.

Entitlement to a separate 10 percent rating, and no higher, for surgical scar of the left foot is granted from March 1, 2010, subject to controlling regulations applicable to the payment of monetary benefits.

____________________________________________
U. R. POWELL
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs