Clifford L. FELDEN, Appellant,

v.

Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.

No. 97–52.

United States Court of Veterans Appeals.

Sept. 22, 1998.

Sean Kendall, Boulder, CO, was on brief for appellant.

Robert E. Coy, Acting General Counsel; Ron Garvin, Assistant General Counsel; Carolyn F. Washington, Deputy Assistant General Counsel; and Michael P. Butler, Washington, DC, were on brief for appellee.

Before FARLEY, HOLDAWAY, and IVERS, Judges.

HOLDAWAY, Judge:

The appellant, Clifford L. Felden, appeals the October 1996 decision of the Board of Veterans' Appeals (BVA or Board) that denied his claim for a temporary total disability rating for convalescence (TTDC). Both parties have filed briefs. The Court has jurisdiction of the case under 38 U.S.C. § 7252(a). For the following reasons, the Court will reverse the decision of the Board and remand the matter.

## I. FACTS

The appellant served on active duty in the U.S. Army from October 1968 to October 1970. While in Vietnam, he suffered a hyperextension injury to his right little finger. Surgery was performed on his finger while in Vietnam, but it was unsuccessful. In September 1969, reconstructive surgery was performed on the appellant's right little finger. The appellant was subsequently granted service connection for residuals of his right-little-finger injury and assigned a 10% disability rating.

In September 1992, the appellant fractured the proximal interphalangeal (PIP) joint of his service-connected right little finger. After conservative treatment, the fracture healed, but the appellant could not fully bend his finger. On February 4, 1993, John A. Bukovnik, M.D., performed an outpatient arthroplasty of the PIP joint of the appellant's right little finger and placed fixation pins in the finger. The surgery report did not indicate that the appellant was instructed to follow a course of convalescence. On February 5, 1993, Dr. Bukovnik changed the appellant's dressing. The doctor noted that there were no problems of vascular compromise or significant swelling. He also gave the appellant a "Basket splint for additional protection." Dr. Bukovnik told him that from the x-rays taken in the recovery room, the surgery did not appear to have been as successful as it had appeared at the time of surgery. The doctor attributed the problems to the scar that had developed from prior procedures.

On February 8, 1993, the appellant applied for a TTDC. A February 12, 1993, letter from Dr. Bukovnik stated:

> Mr. Felden is currently under my care for a[sic] injury which occurred last August 1992. He has recently undergone surgery on February 3, 1993[,] to repair his right little finger.

> He will be not able to return to employment [for] at[ ]least eight weeks post[ ]operatively, which is approx[imately] April 5, 1993.

On February 15, 1993, the sutures were removed from the appellant's finger, but the doctor delayed removing the pins because there was less healing "at the angles of the Brunner incision" than he had expected. On March 2, 1993, the doctor removed the pins from the appellant's finger and, under digital

block anesthesia, manipulated the joint. The appellant's finger would bend to 45%. The appellant was instructed to begin passive range-of-motion exercises and prescribed additional pain medication.

In June 1993, the appellant was examined by a VA physician who diagnosed the appellant with "[a]rthrodesis PIP of [the] right [little] finger with flexor contracture of [the] DIP [(distal interphalangeal)] joint at 30 degree[s]." The VA examiner noted that the appellant was "[s]tatus post multiple surgeries for tendon repair[,] unsuccessful so far."

The appellant underwent a second surgery on his right little finger in July 1993. Two days after the surgery, Dr. Bukovnik changed the appellant's dressing and noted that his finger was "normal in color with no evidence of any infection or problem." The doctor also fashioned an aquaplast splint to provide protection for the finger. Four weeks after the surgery, the doctor noted that the arthrodesis felt "quite stable" and the skin looked clear. The appellant was shown how to apply a splint that would be removed only for bathing purposes. Two weeks later, Dr. Bukovnik decided that "it [would] be necessary to continue immobilization" of the finger.

In September 1993, a VA regional office (VARO) denied the appellant's claim for a TTDC. That same month, the appellant filed a Notice of Disagreement (NOD). A letter dated November 23, 1993, from Dr. Bukovnik stated the following:

> This letter is in reference to Clifford Feldon's [sic] disability dates relating to his surgery back in February of 1993.
>
> He was totally disabled from [February 3, 1993,] thru [August 28, 1993,] during which time we underwent two surgical procedure [sic] to correct a[sic] injury to his right little finger.

In December 1993, the VARO confirmed its decision to deny the appellant's claim for a TTDC. In January 1994, the appellant filed another NOD. In February 1994, the appellant filed a substantive appeal to the Board. The VARO received a letter from Dr. Bukovnik explaining that the appellant had undergone surgery for a fracture involving the PIP joint of his right little finger.

The doctor also stated that the appellant "was restricted in his activities from February through August of 1993 due to treatment that was required for this injury."

At an April 1994 VA personal hearing, the appellant testified that Dr. Bukovnik had told him "not to do anything because anything I would do would destruct [sic] his surgery." He said that he was not working at the time of his February 1993 surgery and was receiving workers' compensation for a foot injury. The hearing officer confirmed the VARO's denial of the appellant's claim for a TTDC. In November 1994, the VARO received a letter from Michael A. DiCello, M.D., explaining that the appellant had been totally disabled since November 1991, due to severe and chronic symptoms relating to his back, ankle, and shoulder. The doctor stated that his condition was permanent with no hope for recovery.

In August 1996, the appellant testified before a member of the Board. The appellant stated that after his first surgery, he was restricted from using his right hand. He stated that he was not working at the time of the surgery, but that he normally worked in a grocery store. He explained that after the pins were taken out of his finger, the doctor had placed a plastic cast on his fingers that had totally wrapped his fingers and prohibited him from grabbing or holding things. In response to questions from the Board member, the appellant also explained that the doctor had formed a plastic cast that only went over his right little finger, but that the doctor had continued to wrap his whole hand for one or two weeks after each surgery. The appellant stated that after the second surgery, the doctor had permitted him to use his hand freely in September 1993.

On appeal to the BVA, the Board determined, on the merits, that the appellant was not entitled to a TTDC for the periods after the February or July 1993 operations. The Board found that "[t]reatment in February and July 1993 did not necessitate at least one month of convalescence."

## II. ANALYSIS

■ Section 4.30 of title 38, Code of Federal Regulations, provides:

A total disability rating (100[%]) will be assigned without regard to other provisions of the rating schedule when it is established by report at hospital discharge (regular discharge or release to non-bed care) or outpatient release that entitlement is warranted under paragraph (a)(1), (2)[,] or (3) of this section effective the date of hospital admission or outpatient treatment and continuing for a period of [one], [two], or [three] months from the first day of the month following such hospital discharge or outpatient release....

(a) Total ratings will be assigned under this section if treatment of a service-connected disability resulted in:

(1) Surgery necessitating at least one month of convalescence[.]

Entitlement to a TTDC must be "established by report at hospital discharge ... or outpatient release." The preposition *at* means "on or close to the time ... of." WEBSTER'S NEW WORLD DICTIONARY 85 (3rd College ed.1988). Therefore, the report must be temporally located near a discharge or release of the claimant. Obviously, the report must establish at a minimum that the claimant underwent surgery that would necessitate a convalescence. Convalescence is "the stage of recovery following an attack of disease, a surgical operation, or an injury." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 374 (28th ed.1994). The word *recovery* means "the act of regaining or returning toward a normal or healthy state." WEBSTER'S MEDICAL DESK DICTIONARY 606 (1986). The Secretary claims that convalescence is the amount of time needed at home to recover. However, the term convalescence does not necessarily entail in-home recovery. In fact, a separate paragraph under section 4.30(a) creates entitlement to a TTDC where residuals from a surgery actually require house confinement. *See* 38 C.F.R. § 4.30(a)(2) ("Surgery with severe postoperative residuals such as ... the necessity for house confinement...."). The Secretary's definition would make paragraph (a)(1) a nullity. In sum, entitlement to a TTDC requires that a report, rendered near the time of a hospital discharge or an outpatient release, indicate that a surgical procedure had

been performed that would require at least one month for the veteran to return to a healthy state. It would be proper for a later medical opinion, issued close to the time of discharge or release, to explain how long a period of convalescence would have been needed. If a person underwent open heart surgery, a subsequent medical opinion could certainly establish if one or more months of "convalescence" would be needed to recover.

A determination about whether a one-month period of convalescence was needed after a surgical procedure is a finding of fact. *See James v. Brown,* 7 Vet.App. 495, 497 (1995) (applying the "clearly erroneous" standard of review to a Board determination about individual unemployability); *Francisco v. Brown,* 7 Vet.App. 55, 57 (1994) (holding that determinations about degree of impairment are findings of fact). Factual determinations by the Board are reviewed by this Court under the "clearly erroneous" standard. *See* 38 U.S.C. § 7261(a)(4); *James* and *Francisco,* both *supra.* A finding of fact is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *Gilbert v. Derwinski,* 1 Vet.App. 49, 52 (1990). "[T]his Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible' basis in the record for the factual determinations of the BVA, [the Court] cannot overturn them." *Id.* at 53.

In this matter, the appellant had two surgeries performed on his right little finger. The treatment records following both the surgeries do not contain information expressly prescribing a time needed for the appellant to convalesce. However, nine days after the first surgery, his doctor wrote a letter stating that the appellant would not be able return to employment for eight weeks after the surgery. Therefore, the doctor's opinion was that the appellant would not return to a state of health sufficient for employment for eight weeks. In November 1993, Dr. Bukovnik wrote a letter stating that the appellant was totally disabled from February to August 1993 because of treatment relating to his finger surgeries. In February 1994, the

doctor also wrote another letter stating that the appellant had been restricted in his activities from February to August 1993, due to treatment for his right-little-finger injury. Dr. Bukovnik's first letter is sufficient to establish that the appellant would require eight weeks of convalescence after his surgery. (Disability compensation is generally based on the level of impairment of the veteran's earning capacity in civil occupations. *See* 38 C.F.R. §§ 3.321(b)(1), 4.1 (1997).)

▇▇ The Board rejected Dr. Bukovnik's opinion that the appellant could not return to work for eight weeks. It is the function of the Board to determine the weight of the evidence, and the Court will not reverse those findings absent clear error. *See Tulingan v. Brown*, 9 Vet.App. 484, 487 (1996). The Board must support its findings about medical questions with independent medical evidence and may not refute expert medical conclusions based on its own unsubstantiated opinion. *See Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991). The Board determined that the doctor's opinion was conclusory and that the opinion did not state that the appellant's finger injury had caused his inability to work. The Board also reviewed the appellant's treatment records and determined that his symptomatology did not warrant at least one month of convalescence. However, Dr. Bukovnik, who performed the reconstructive surgery, wrote the letter specifically discussing the appellant's finger surgery and then concluded that the appellant could not return to work for eight weeks. The connection between the appellant's unemployability and the operation was apparent from the doctor's letter. The doctor was not required to give detailed reasons and bases for his opinion about his own patient's state of employability. Therefore, the Board's determination about the probativeness of the doctor's opinion regarding the eight-week period was clearly erroneous. *See Tulingan, supra*. Furthermore, it was impermissible for the Board to form its own conclusion, absent independent supporting medical evidence, that the appellant's surgery did not necessitate at least a month of convalescence. *See Colvin, supra*. That determination was a medical question the Board was not competent to make. *See id.* Dr. Bukovnik's opin-

ion, in that respect, was uncontroverted by separate medical evidence.

▇▇ Also, the clinical records provide support for the doctor's opinion. Twelve days after the surgery, the doctor stated that there appeared to be less healing at the angles of the Brunner incision than expected. Twenty-three days passed before the doctor was prepared to remove the pins from the appellant's finger. The pins were removed almost one month from the date of the first surgery. After that time, the appellant was required to perform self-help therapy, but his finger continued to lose flexion. Therefore, with respect to a TTDC for the eight-week period after the first surgery, the decision of the Board must be reversed because the evidence in favor of the appellant's claim is uncontroverted. *See James*, 7 Vet.App. at 497; *Beaty v. Brown*, 6 Vet.App. 532, 538 (1994).

Doctor Bukovnik also opined that because of the appellant's two finger surgeries, he was totally disabled and restricted in his activities from February to August 1993. There is no independent medical evidence to refute the doctor's opinion of the appellant's condition during that period. The appellant's treatment records indicate that he continued to visit his doctor for evaluations and therapy advice through May and June 1993, until the doctor determined that a second operation would be necessary. Therefore, the evidence supports the appellant's contention that he was still in a state of convalescence. The evidence clearly supports an award of a TTDC for the applicable period following the appellant's first surgery. *See James* and *Beaty*, both *supra*.

However, the appellant is only entitled to a TTDC for up to three months from the first day of the month following the surgery. *See* 38 C.F.R. § 4.30(a). The Secretary then has discretion to grant an extension of one, two, or three months after the initial three-month period. *See id.* at § 4.30(b). In this case, the three-month period would have ended on May 31, 1993. The Court reviews a decision to grant or deny an extension of TTDC benefits under the "arbitrary and capricious" standard of review. *See Seals v. Brown*, 8

Vet.App. 291, 296 (1995). Because initial entitlement to a TTDC was not established, the provisions for a discretionary extension have not been considered by the Secretary or the Board in the first instance. It is not the role of this Court to review that issue in the first instance. *See Miller v. West,* 11 Vet.App. 345, 347–348 (1998). Therefore, that issue must be remanded to the Board for further proceedings.

The second surgery began a new initial period of entitlement to a TTDC under section 4.30(a). Dr. Bukovnik has opined that the appellant was totally disabled and restricted in his activities until August 1993. Six weeks after the second surgery, on August 27, 1993, the appellant's doctor noted that immobilization of the finger was still necessary. After that appointment, the medical records do not indicate that the appellant was required to further restrict the activities using his finger. Therefore, the evidence is uncontroverted that from July 14, through August 27, 1993, the appellant was recovering from the second surgery and was entitled to a TTDC. In that respect, the Board's decision must also be reversed.

### III. CONCLUSION

The Board's decision is REVERSED insofar as the Board denied the appellant TTDCs for the periods following the appellant's two surgeries: February 2, 1993, to May 31, 1993, and July 14, 1993, to August 31, 1993. That matter is REMANDED with directions to assign the appellant TTDCs in accordance with this opinion. The issue of whether the appellant is entitled to a discretionary extension of the first TTDC past May 31, 1993, is also REMANDED to the Board for further proceedings consistent with this opinion.