Citation Nr: 1719117 
Decision Date: 05/31/17 Archive Date: 06/06/17

DOCKET NO. 16-11 885 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to an extension beyond September 30, 2014 of a temporary total rating (TTR) under 38 C.F.R. § 4.30 based on a need for convalescence following lumbar laminectomy.

2. Entitlement to a rating in excess of 40 percent for service-connected chronic lumbosacral strain prior to August 14, 2014.

3. Entitlement to a rating in excess of 40 percent for service-connected chronic lumbosacral strain for the period beginning October 1, 2014.


REPRESENTATION

Veteran represented by: The American Legion

ATTORNEY FOR THE BOARD

Elizabeth Jamison, Associate Counsel


INTRODUCTION

The Veteran had active duty in the United States Army from November 1950 to December 1953; January 1955 to May 1962; and July 1962 to July 1966.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a January 2015 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida, which assigned a temporary evaluation of 100 percent effective August 14, 2014, due to surgery requiring convalescence; a 40 percent evaluation was confirmed and continued effective October 1, 2014. The Veteran submitted a notice of disagreement in March 2015. A statement of the case was issued in February 2016. The Veteran perfected a timely substantive appeal in March 2016.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2016). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The issue of entitlement to a rating in excess of 40 percent for service-connected chronic lumbosacral strain for the period beginning October 1, 2014, is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).

FINDINGS OF FACT

1. As of October 1, 2014, the Veteran's low back disability was not manifested by severe postoperative residuals such as incompletely healed surgical wounds, stumps of recent amputations, therapeutic immobilization of one major joint or more, application of a body cast, the necessity for house confinement, or the necessity for continued use of a wheelchair or crutches with regular weight-bearing prohibited so as to require an extension of convalescence following the surgery performed on August 14, 2014.

2. For the period prior to August 14, 2014, the Veteran's lumbosacral strain was not manifested through unfavorable ankylosis of the entire thoracolumbar spine, neurologic abnormalities, or intervertebral disc syndrome. 


CONCLUSIONS OF LAW

1. The criteria for an extension beyond September 30, 2014 of a temporary total rating based on a need for convalescence following left knee surgery have not been met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § 4.30 (2016).

2. The criteria for a rating in excess of 40 percent prior to August 14, 2014 for lumbosacral strain are not met. 38 U.S.C.A. §1155 (West 2014); 38 C.F.R. 
§§ 4.1, 4.2, 4.7, 4.40, 4.45, 4.59, 4.71A, General Rating Formula for Diseases and Injuries of the Spine, Diagnostic Code 5237 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duty to Notify and Assist

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. 
§§ 3.102, 3.156(a), 3.159, 3.326(a) (2016). 

The Veteran submitted his increased rating claim in July 2014 via VA Form 21-526EZ for fully developed claims. The form includes notice regarding what evidence is required to substantiate a claim for service connection and of the Veteran's and VA's respective duties for obtaining evidence. The notice also provided information on how VA assigns disability ratings. The VA's duty to notify is satisfied by this form. 

The record reflects that VA made reasonable efforts to obtain or assist in obtaining the records relevant to the matter decided herein. The pertinent evidence associated with the claims consists of private treatment records, VA treatment records, and statements from the Veteran, his care-giver, and his representative. Here, VA has adequately discharged its duty to locate records and afforded the Veteran notice and opportunity to submit any identified records that may be in his possession. The Veteran has not identified any outstanding records that have not been requested or obtained. The Board therefore finds that VA has met its duty to assist in obtaining the relevant records.

In summary, the duties imposed by the VCAA have been considered and satisfied. There is no additional notice that should be provided, nor is there any indication of further existing evidence to obtain or development required to create any additional evidence to be considered in connection with the claim. Thus, any error in the sequence of events or content of the notice is not shown to prejudice the Veteran or to have any effect on the appeal. Any such error is deemed harmless and does not preclude appellate consideration of the matter herein decided. See Mayfield v. Nicholson, 20 Vet. App. 539, 543 (2006) (rejecting the argument that the Board lacks authority to consider harmless error); see also ATD Corp. v. Lydall, Inc., 159 F.3d 534, 549 (Fed. Cir. 1998).

II. Temporary Total Rating

Under 38 C.F.R. § 4.30, a temporary total rating (TTR) for convalescence will be assigned from the date of hospital admission and continue for 1, 2, or 3 months from the first day of the month following hospital discharge when treatment of a service-connected disability results in: (1) surgery necessitating at least one month of convalescence; (2) surgery with severe postoperative residuals such as incompletely healed surgical wounds, stumps of recent amputations, therapeutic immobilization of one major joint or more, application of a body cast, or the necessity for house confinement, or the necessity for continued use of a wheelchair or crutches (regular weight-bearing prohibited); or (3) immobilization by cast, without surgery, of one major joint or more. 38 C.F.R. § 4.30(a).

Total ratings for convalescence may be extended for 1, 2, or 3 months beyond the initial 3 months for any of the three reasons set forth under 38 C.F.R. § 4.30(a). Extensions of 1 or more months up to 6 months beyond the initial 6 months period may be made for reasons (2) or (3) under 38 C.F.R. § 4.30(a) upon approval of the Veterans Service Center Manager. 38 C.F.R. § 4.30(b).

Notations in the medical record as to a veteran's incapacity to work after surgery must be taken into account in the evaluation of a claim brought under the provision of 38 C.F.R. § 4.30. See Seals v. Brown, 8 Vet. App. 291, 296-97 (1995); Felden v. West, 11 Vet. App. 427, 430 (1998). Furthermore, the term "convalescence" does not necessarily entail in-home recovery.

The Board has reviewed all of the evidence in the Veteran's claims file, with an emphasis on the evidence relevant to this appeal. Although the Board has an obligation to provide reasons and bases supporting its decision, there is no need to discuss, in detail, every item of evidence of record. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (holding that VA must review the entire record, but does not have to discuss each piece of evidence). The Board will summarize the relevant evidence as appropriate and focus specifically on what the evidence shows, or fails to show, as to the claims. When there is an approximate balance of evidence regarding an issue material to the determination of a matter, the benefit of the doubt in resolving the issue shall be given to the claimant. See 38 U.S.C.A. 
§ 5107; 38 C.F.R. §§ 3.102, 4.3 (2016); Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

The Veteran contends that an extension of the TTR for convalescence following low back surgery in August 2014 is warranted. The January 2015 rating decision granted a TTR for the period beginning August 14, 2014, with a 40 percent rating in effect beginning October 1, 2014.

The Veteran underwent lumbar laminectomy on August 14, 2014, and was discharged on August 17, 2014. He was instructed to avoid lifting heavy objects for at least six weeks. A rolling walker was provided and a follow up visit was schedule for one month later.

The Veteran underwent VA examination in conjunction with his claim on September 9, 2014. At the time of the examination, the Veteran was less than one month in to his recovery from the August 2014 lumbar laminectomy. He was unable to walk more than 100 yards or stand/sit for 10-15 minutes secondary to constant back pain; his first follow-up with his surgeon was several days later. The examiner attempted to evaluate the Veteran's back condition, but ultimately recommended that he be re-evaluated at a later date. 

At a Surgery Clinic Neuro Consult on September 12, 2014, the Veteran's back and leg pain were much improved and he was returned to baseline with chronic low back pain. He was able to walk 200 feet. On September 18, 2014, the Veteran was approved for physical therapy evaluation for two times a week for six weeks. 

At a pain consult on October 22, 2014, approximately 2 months post-surgery, he noted very good pain reduction, reported at a 2 out of 10 level. The Veteran stated he had some dull pain in his back but was no longer falling. His treatment with the pain clinic was discontinued.

Finally, at another Surgery Clinic Consult dated October 31, 2014, approximately 2 1/2 months post-surgery, great improvement was noted and the Veteran reported mild back pain with a 3 out of 10 level of pain after prolonged activity. He was no longer on narcotics and his wound was healed. The doctor noted continuing physical therapy. He was discharged from the surgery clinic.

After careful consideration of the evidence of record, the Board finds that the evidence does not indicate the presence of severe postoperative residuals subsequent to September 30, 2014. There is no objective medical evidence of incompletely healed surgical wounds, therapeutic immobilization of one major joint or more, application of a body cast, the necessity for house confinement, or prohibition of weight-bearing requiring the use of a wheelchair or crutches to warrant extension of a TTR beyond September 30, 2014. 38 C.F.R. § 4.30. 

Although the Veteran sought medical treatment for back pain following the August 2014 surgery, there is no persuasive evidence that he required convalescence after September 30, 2014. As of September 12, 2014, treatment notes indicated that the Veteran's back pain was much improved and he was returned to baseline with chronic low back pain. He was able to walk 200 feet. By October 22, 2014, the Veteran reported pain at only 2 out of 10. The evidence does not reflect that the Veteran's lumbar disability was manifested by instability, weakness, inflammation, flare-ups, or giving way after September 30, 2014. The surgical wounds were healed. Therapeutic immobilization, a cast, or the need for a wheelchair or crutches to avoid weight-bearing were not required. While physical therapy was approved, the Board finds that the need for physical therapy does not meet the definition of convalescence under 38 C.F.R. § 4.30(b). Indeed, his participation in physical therapy and other treatment appointments indicates that the Veteran was not housebound. 

The Board has considered the Veteran's contentions regarding the status of his back post-surgery. The Veteran is competent to provide evidence about his disability; for example, he is competent to describe symptoms including pain and instability. See Layno v. Brown, 6 Vet. App. 465 (1994). He is also credible to the extent that he sincerely believes he is entitled to an extension for a TTR. However, he is not competent to provide evidence pertaining to the medical details of convalescence post-surgery, as this is a complex medical issue which requires the application of knowledge beyond the realm of a lay person. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); Layno, supra at 469-470. Competent evidence concerning the nature and extent of the Veteran's period of convalescence was provided the medical evidence of record; namely, his treatment records. Thus, the lay evidence is outweighed by the competent medical evidence that evaluates the true extent of his lumbar disability following surgery. 

Therefore, as the competent and probative evidence shows that the Veteran did not require convalescence beyond September 30, 2014 for his low back following the August 2014 surgery, an extension of a TTR is not warranted.

In reaching the above conclusions, the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the Veteran's claim, that doctrine is not applicable. See 38 U.S.C.A. 
§ 5107(b); Gilbert, 1 Vet. App. at 55-57.

III. Increased rating

A Report of General Information dated June 19, 2014 documented the Veteran's desire to pursue an increased rating for his chronic lumbosacral strain. A written claim form was received on July 15, 2014. As discussed above, the Veteran underwent surgery on August 14, 2014, and was assigned a temporary 100 percent rating from the date of the surgery through September 30, 2014. The issue of the appropriate rating from August 14, 2014 onward is addressed in the remand portion of the decision. However, the Board must also consider the appropriate rating of the disability for the year prior to the submission of the claim. 38 U.S.C.A. § 5110 (b)(2) (West, 2014); 38 C.F.R. § 3.400(o)(2) (2016); see Harper v. Brown, 10 Vet. App. 125, 126 (1997); Hart v. Mansfield, 21 Vet. App. 505 (2007). Thus, the Board will consider whether a rating in excess of 40 percent is warranted for the period of June 19, 2013 until the Veteran's surgery on August 14, 2014.

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (rating schedule), found in 38 C.F.R. Part 4. Disability ratings are intended to compensate impairment in earning capacity due to a service-connected disorder. 38 U.S.C.A. § 1155. Evaluation of a service-connected disorder requires a review of a veteran's entire medical history regarding that disorder. 38 C.F.R. §§ 4.1, 4.2; Schafrath v. Derwinski, 1 Vet. App. 589 (1991). When a reasonable doubt arises regarding the degree of disability, such doubt will be resolved in favor of the claimant. 38 C.F.R. § 4.3. If there is a question as to which evaluation to apply to a veteran's disability, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. 
§ 4.7. 
 
VA regulations, set forth at 38 C.F.R. §§ 4.40, 4.45, and 4.59, provide for consideration of functional impairment due to pain on motion when evaluating the severity of a musculoskeletal disability. The Court has held that a higher rating can be based on "greater limitation of motion due to pain on use." DeLuca v. Brown, 8 Vet. App. 202, 206 (1995). Any such functional loss must be "supported by adequate pathology and evidenced by the visible behavior of the claimant." See 38 C.F.R. § 4.40.

For the relevant period, the Veteran's low back disability was rated as 40 percent disabling under 38 C.F.R. § 4.71A, General Rating Formula for Diseases and Injuries of the Spine, encompassing Diagnostic Code 5237 for lumbosacral or cervical strain. With or without symptoms such as pain (whether or not it radiates), stiffness, or aching in the area of the spine affected by residuals of injury or disease, the Formula provides for ratings as follows: A rating of 40 percent is warranted when there is forward flexion of the thoracolumbar spine 30 degrees or less or favorable ankyloses of the entire thoracolumbar spine. A rating of 50 percent is warranted for unfavorable ankyloses of the entire thoracolumbar spine; a rating of 100 percent is warranted for unfavorable ankylosis of the entire spine. Id.

Turning to the evidence of record, X-rays of the lumbosacral spine were taken in October 2013; the resulting impression included degenerative changes with severe canal stenosis at L4-L5; moderate to severe bilateral neuroforaminal narrowing at L5-51, correlated with radicular symptoms; and chronic L1 compression deformity without evidence of acute fracture.

A second round of imaging was conducted January 2014; the resulting impression was stable compression fracture L1 and stable moderate spondylosis L5/S1. No change from the October 2013 imaging was noted. 
A MRI of the Veteran's lumbar spine was ordered in March 2014 due to the Veteran's report of worsening back pain. The resulting findings included no evidence of acute compression fracture, sagittal alignment maintained without translational subluxation, and mild to moderate spondyltoic and hypertrophic changes. 

The August 2014 operation report described the Veteran's recent history of back pain, beginning with presenting to the neurosurgery clinic in May 2014 with complaints of progressive back pain and bilateral lower extremity pain. The Veteran stated that his pain was severe enough to cause falls. He described it as worsening with standing and ambulating; he was unable to walk more than 50 feet. It was recommended that he undergo conservative therapy for his complaints. He underwent a trial of lumbar medical branch blocks with no improvement in his symptoms. When the Veteran returned to the clinic for further evaluation, his symptoms were progressive and imaging showed prominent lumbar stenosis at L405. At that time, it was recommended that he undergo surgical decompression. 

An August 2014 occupational therapy note also documented the Veteran's lumbar spine symptoms, including his complaints of constant back pain, sharp and aching in nature, and worse with flexion, standing, and ambulation. He described the pain as 7 out of 10 at best and 10 out of 10 at worst. 

After thorough consideration of the evidence of record, the Board finds that the nature, frequency, duration, and severity of the Veteran's symptoms warrant no more than a 40 percent rating during the relevant period.

There is no evidence in the VA treatment records, private treatment records, or VA examination reports, that the Veteran had ankylosis, favorable or unfavorable, of the lumbosacral spine during the period prior to August 14, 2014. The Board notes that ankylosis is defined as immobility and consolidation of a joint due to disease, injury, or surgical procedure. See Dorland's Illustrated Medical Dictionary 93 (30th ed. 2003); see also 38 C.F.R. § 4.71a, General Rating Formula for Diseases and Injuries of the Spine, NOTE (5) (defining ankylosis as fixation of a joint in a particular position). Assignment of a rating of 50 percent or higher requires unfavorable anklyosis of the entire thoracolumbar spine. 38 C.F.R. § 4.71a, Diagnostic Code 5237. As the Veteran did not have not have ankylosis of the thoracolumbar spine, favorable or unfavorable, during the relevant period, a rating of 50 percent or higher is unwarranted. 

The evidence before the Board demonstrates that the Veteran is most appropriately rated at 40 percent under Diagnostic Code 5237 for the period prior to August 14, 2014. The Board notes that the provisions of 38 C.F.R. §§ 4.40, 4.45 should be considered in conjunction with a diagnostic code predicated on limitation of motion, such as Diagnostic Code 5237. See Johnson v. Brown, 9 Vet. App. 7 (1996). However, even when considering the Veteran's pain, the requirements for a disability rating in excess of 40 percent are not met. Accordingly, the Board finds the 40 percent evaluation adequately compensates the Veteran for the pain and functional impairment caused by his service-connected lumbosacral spine disability. See, e.g., DeLuca, 8 Vet. App. at 202; 38 C.F.R. §§ 4.40, 4.45. To be entitled to the next higher evaluation of 50 percent, there must be unfavorable ankylosis of the entire thoracolumbar spine. Even with the limitations put on the Veteran's spine as evidenced by the decreased ability to perform normal working movements of the body, there is no evidence of ankylosis or persuasive probative evidence that shows a level of impairment during flare-ups contemplated in a higher rating. As such, an evaluation in excess of 40 percent is not warranted.

Also, the Board notes the Veteran's report of pain in his legs and the October 2013 X-ray impression indicating radicular symptoms. However, the September 2014 VA examination report, based upon a review of the claims file and the Veteran's lay statements, refuted the presence of radicular pain or any other signs or symptoms due to radiculopathy. No other neurologic abnormalities or finding related to the thoracolumbar spine were present. Accordingly, a separate rating is not warranted.

Accordingly, the Board determines that a 40 percent rating, and no higher, is warranted under Diagnostic Code 5237 for the period of June 19, 2013 to August 14, 2014. 


ORDER

Entitlement to an extension of a temporary total disability rating under 38 C.F.R. 
§ 4.30 beyond October 1, 2014, based on a need for convalescence following lumbar laminectomy, is denied. 

Entitlement to rating in excess of 40 percent for chronic lumbosacral strain for the period prior to August 14, 2014 is denied. 


REMAND

While the Board regrets the delay, additional development is necessary prior to the adjudication of the Veteran's claims. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c). 

The Veteran contends that his service-connected lumbosacral strain warrants a rating in excess of 40 percent. He underwent VA examination in conjunction with his claim in September 2014, while recovering from the August 2014 lumbar laminectomy. The examiner recommended that the Veteran be re-evaluated at a later date to avoid interfering with his recovery to conduct the necessary range of motion testing. 

In July 2016, the Veteran underwent further VA examination. Range of motion testing was not completed as the Veteran was confined to a wheelchair. The examiner noted "less movement than normal due to ankylosis, adhesions, etc." However, the examiner also noted in a separate portion of the examination report that ankylosis of the spine was not present. These clinical findings appear to be internally inconsistent. 

This finding is critical, as the January 2015 rating decision and February 2016 statement of the case both noted that the lumbosacral spine disability did not warrant a higher 50 percent rating absent unfavorable ankylosis of the entire thoracolumbar spine. The Veteran's treatment records are silent as to the presence of ankylosis, either favorable or unfavorable. Therefore, a new examination is needed to clarify whether the Veteran does in fact have ankylosis of the spine and whether it is favorable or unfavorable. 

In exceptional cases, an examiner may state that because of age, body habitus, neurologic disease, or other factors not the result of disease or injury of the spine, the range of motion of the spine in a particular individual should be considered normal for that individual, even though it does not conform to the normal range of motion. 38 C.F.R. § 4.71a, General Rating Formula for Diseases and Injuries of the Spine, Note 3. Provided that the examiner supplies an explanation, the examiner's assessment that the range of motion is normal for that individual will be accepted. 

As this case must be remanded for the foregoing reasons, any recent treatment records, including VA records, should also be obtained. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c); Bell v. Derwinski, 2 Vet. App. 611, 613 (1992).

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Contact the appropriate VA Medical Center(s) and obtain and associate with the claims file all outstanding records of treatment for the Veteran.

2. Contact the Veteran and afford him the opportunity to identify any relevant medical records by name, address, and dates of treatment or examination for his spine. After securing the proper authorizations where necessary, obtain all records of treatment or examination from all the sources listed by the Veteran which are not already on file. 

3. If any treatment records, either VA or non-VA, cannot be obtained after reasonable efforts, issue a formal determination documented in the claims file that such records do not exist or that further efforts to obtain such records would be futile. The Veteran must be notified of the attempts made and why further attempts would be futile, and allowed the opportunity to provide such records, per 38 U.S.C.A. § 5103A(b)(2) and 38 C.F.R. 
§ 3.159(e).

4. Once any additional records are associated with the claims file, provide the file, to include a copy of this REMAND, schedule the Veteran for a VA examination to assess the nature and severity of his lumbosacral strain for the post-surgery period beginning October 1, 2014. The examiner must review the claims file and address:

a) The examiner is requested to make every attempt to measure the Veteran's thoracolumbar range of motion, including seated measurements or other accepted means of gauging the limitations of his movement due to his lumbosacral strain. 

b) The examiner should answer the following: does the Veteran have ankylosis (fixed deformity) of the spine? If so, is it unfavorable or favorable? If unfavorable, is it extremely unfavorable or intermediate? 

c) The examiner should address whether the Veteran presents an exceptional case under 38 C.F.R. § 4.71a, General Rating Formula for Diseases and Injuries of the Spine, Note 3, i.e. whether due to age, body habitus, neurologic disease, or other factors not the result of disease or injury of the spine, the range of motion of his spine should be considered normal for that individual, even though it does not conform to the normal range of motion. 

The examiner must provide a comprehensive report including complete rationales for all opinions and conclusions reached, citing the objective medical findings leading to the conclusions.

5. Review the examination report to ensure that it is in complete compliance with the directives of this REMAND. If the report is deficient in any manner, the AOJ must implement corrective procedures. Stegall v. West, 11 Vet. App. 268 (1998).

6. After completing the above and any other development deemed necessary, readjudicate the Veteran's claims based on the entirety of the evidence. If the benefits sought on appeal are not granted to the Veteran's satisfaction, he and his representative should be provided with a supplemental statement of the case. An appropriate period of time should be allowed for response before the matter is returned to the Board.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This REMAND must be afforded expeditious treatment. The law requires that all claims remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
DEBORAH W. SINGLETON
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs