﻿Citation Nr: AXXXXXXXX
Decision Date: 07/30/19 Archive Date: 07/30/19

DOCKET NO. 190206-2685
DATE: July 30, 2019

ORDER

Entitlement to an extension of the temporary total evaluation because of treatment for a service-connected condition requiring convalescence for left shoulder degenerative arthritis from April 1, 2016 to November 29, 2016, is denied.

Entitlement to an increased rating greater than 20 percent for left shoulder degenerative arthritis, status post surgery is denied.

FINDINGS OF FACT

1. The Veteran is not shown to have been in need for convalescence for her left shoulder arthroscopy and mini-open rotator cuff tear repair for the period from April 1, 2016 to November 29, 2016.

2. The Veteran’s left shoulder disability is manifested by pain, increasing with upper extremity motion and flare-ups; limitation of motion from pain to no less than 85 degrees of flexion and 90 degrees of abduction; tenderness; and objective evidence of arthritis.

CONCLUSIONS OF LAW

1. The criteria for entitlement to an extension of the temporary total evaluation because of treatment for a service-connected condition requiring convalescence for left shoulder degenerative arthritis from April 1, 2016 to November 29, 2016, have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. § 4.30 (2018).

2. The criteria for entitlement to an increased rating greater than 20 percent for left shoulder degenerative arthritis, status post surgery, have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.159, 3.321, 4.1, 4.2, 4.3, 4.7, 4.40, 4.45, 4.71a, Diagnostic Code (DC) 5003-5201 (2018).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had active duty service in the United States Army from November 1985 to November 1988.

The Board notes that the rating decision on appeal was issued in July 2016. In July 2018, the Veteran elected the modernized review system. 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 19.2(d)). In January 2019, the RO issued an additional rating decision on the above issues on appeal and in February 2019, the Veteran again elected the modernized review system.

Relevant Factual Background

The Veteran last worked as a state correctional officer in September 2013 and employer disability benefits were exhausted in December 2014. See VA Form 21-4192 dated May 2, 2016. On November 18, 2015, the Veteran underwent a left shoulder arthroscopy and mini-open rotator cuff tear repair.

In March 2016, the Veteran was noted to be doing very well and her left shoulder was stable. On examination, muscle strength and sensation were normal. The assessment was left shoulder rotator cuff repair that was doing well and right shoulder impingement syndrome that also was doing well. The Veteran wanted to return to work and the orthopedic surgeon concluded that the Veteran could be released to perform up to a moderate category of work. If she was doing well in November, the Veteran could return to work without formal restrictions. The nature of the work was not noted. 

In a June 2016 statement, the Veteran wondered why she received only 3 months of temporary total benefits through VA, but that with the same medical evidence her employer gave her a full year of disability benefits. 

A July 2016 VA treatment record addendum indicated that the Veteran was unable to return to work because of shoulder problems. She was complaining of complications that she stated she broached with the surgeon when the Veteran saw him informally. In August 2016, the Veteran reported that she was doing very well, but that her left shoulder had flared-up on her and she was unsure why as there had not been any sudden change. Left shoulder range of motion testing showed 100 degrees of abduction and 130 degrees of flexion. A subsequent August 2016 MRI showed a full-thickness rotator cuff tear involving the interdigitation between the supraspinatus and infraspinatus extending into the anterior fibers of the infraspinatus. The tear was near the site of the prior rotator cuff repair with suture anchors. The ultimate assessment was left shoulder rotator cuff repair for recurrent tear with apparent recurrent tear with some delamination of the rotator cuff. The Veteran wanted to discuss another surgery, given the persistence and magnitude of her symptoms. She understood that surgery for the condition was not mandatory and that she could live with the symptoms as long as they were manageable. The recurrent tear appeared to be repairable, although there was more delamination than at any previous time. 

In November 2016, range of motion testing showed left shoulder abduction from 0 to 100 degrees and flexion from 0 to 130 degrees. Muscle strength and sensation was intact. On November 23, 2016, the Veteran was noted to be an out of work corrections officer living with her son. On November 29, 2016, the Veteran underwent a left rotator cuff repair.

In March 2017, the Veteran reported left shoulder aching pain that was persistent and moderately severe since left shoulder surgery in April 2015. There also was heat, intermittent swelling, and limited range of motion. The pain worsened when raising her arm. The Veteran was noted to have past employment as a correctional officer prior to a September 2013 injury and additional employment as a veterinary technician. 

An April 2017 VA examination report is of record. The examiner diagnosed left shoulder degenerative arthritis. The Veteran reported chronic left shoulder problems. On November 29, 2016, the Veteran had most recently had her fourth left shoulder surgery and had not been released to full activity by her surgeon. She described daily pain and decreased range of motion. The Veteran was right-hand dominant. She denied flare-ups and there was functional loss was that she “Can’t really use it yet.” The examiner could not test the left shoulder because she had not been released to regular activity by her orthopedic surgeon. 

In May 2017, the Veteran was noted to be continuing therapy and making slow progress. The treatment provider did not find the slow progress surprising, given her recurrent rotator cuff tears. The Veteran had no other complaints. Range of motion testing showed abduction and flexion from 0 to 90 degrees. Muscle strength and sensation was normal. A note from the orthopedic surgeon indicated that the Veteran remained under care and had been since her initial surgery. “She should remain totally and temporarily disabled at least until her next [appointment] in 3 months.”

A July 2017 notice of disagreement argued that the Veteran warranted an extension of her temporary total disability rating until the time of her surgery in November 2016. 

The Veteran underwent another VA examination for the shoulders in September 2017. The diagnosis was left shoulder degenerative arthritis status post surgery. Current symptoms included the inability to lift her arm, consistent burning of the shoulder, and warmth to the touch most of the time. The Veteran was right-hand dominant and reported flare-ups consisting of burning and warmth to the touch most of the time. There was functional loss in the left shoulder due to an inability to raise the arm very high, burning if just doing her exercises, an inability to pull or push anything with the left arm, and burning and pain if the arm was lifted for very long. On examination, right shoulder motion was normal. Left shoulder flexion was from 0 to 90 degrees and abduction was from 0 to 95 degrees. External rotation was from 0 to 70 degrees and internal rotation was from 0 to 90 degrees. The range of motion limitation likely resulted in functional loss due to the Veteran’s difficulty with overhead tasks. There was pain noted on examination in all planes of motion other than internal rotation. There was pain on weight bearing, but no crepitus. Repetitive use testing in the left shoulder resulted in flexion reduced to 85 degrees, abduction to 90 degrees, and external rotation to 60 degrees. Muscle strength was 5 out of 5 in the right shoulder and 4 out of 5 in the left shoulder. There was no muscle atrophy or ankylosis. A left rotator cuff condition was suspected, based on positive empty-can and left-off subscapularis testing. There was no instability of the left shoulder. There was no left clavicle, scapula, acromioclavicular joint, or sternoclavicular joint condition suspected. There was no loss of head or malunion of the humerus. There was a 4 centimeter by 0.5 centimeter anterior left shoulder scar that was not painful or unstable. The Veteran did not use any assistive devices for the left shoulder and there was not impairment such that no effective functions remained other than that which would be equally well served by an amputation with prosthesis. Finally, there was objective evidence of pain on passive range of motion testing and non-weight bearing testing.

In November 2017, the Veteran’s shoulder condition was noted to be unchanged. She had no other complaints. On examination, range of motion testing showed shoulder abduction and flexion of greater than 90 degrees. There was full range of passive range of motion. Muscle strength was normal and sensation was intact. The Veteran was noted to be in stable condition and it was recommended that she continue her current care and treatment plan.

A July 2018 letter from the Veteran’s treating VA physician indicated that the Veteran, “has been under my care continuously since her first surgery and was unable to return to work in a Correctional Facility due to her shoulder injury and subsequent surgeries and rehabilitation.”

1. Entitlement to an extension of the temporary total evaluation because of treatment for a service-connected condition requiring convalescence for left shoulder degenerative arthritis from April 1, 2016 to November 29, 2016

The Veteran asserts that she should receive a temporary total disability rating for the entire period between her left shoulder surgery on November 18, 2015, and her subsequent surgery on November 29, 2016. At present, the Veteran is in receipt of a temporary total rating for convalescence for the period from November 18, 2015, to April 1, 2016. She asserts that an extension of the temporary total rating is warranted because she had ongoing pain and weakness and was unable to return to work for the entire period. The Board notes that another temporary total rating for convalescence is in effect for the period from November 29, 2016, to September 1, 2017.

Under 38 C.F.R. § 4.30, a temporary total (100 percent) rating for convalescence will be assigned effective from the date of hospital admission and continue for 1, 2, or 3 months from the first day of the month following hospital discharge when treatment of a service-connected disability results in: (1) surgery necessitating at least one month of convalescence; (2) surgery with severe postoperative residuals such as incompletely healed surgical wounds, stumps of recent amputations, therapeutic immobilization of one major joint or more, application of a body cast, or the necessity for house confinement, or the necessity for continued use of a wheelchair or crutches (regular weight-bearing prohibited); or (3) immobilization by cast, without surgery, of one major joint or more. The total rating will be followed by a rating reflecting the appropriate schedular evaluation; where the evidence is inadequate to assign the schedular evaluation, a physical examination will be scheduled prior to the end of the total rating period. An extension of 1, 2, or 3 months beyond the initial 3 months may be granted and extensions of 1 or more months up to 6 months beyond the initial 6 months period may be made, upon approval of the Veterans Service Center Manager. 38 C.F.R. § 4.30.

Notations in the medical record as to a veteran’s incapacity to work after surgery must be taken into account in the evaluation of a claim brought under the provisions of § 4.30. See Felden v. West, 11 Vet. App. 427, 430 (1998); Seals v. Brown, 8 Vet. App. 291, 296-97 (1995). The Court has defined convalescence as “the stage of recovery following an attack of disease, a surgical operation, or an injury.” Felden, 11 Vet. App. at 430 (citing DORLAND’S ILLUSTRATED MEDICAL DICTIONARY 415 (30th ed., 2003)). The Court also defined recovery as “the act of regaining or returning toward a normal or healthy state.” Id. (citing WEBSTER’S MEDICAL DESK DICTIONARY 606 (1986)). Furthermore, the Court has noted that the term “convalescence” does not necessarily entail in-home recovery. Id. Temporary total ratings for convalescence are payable from the date of entrance into the hospital and are awarded after discharge. 38 C.F.R. § 3.401(h)(2).

The purpose of a temporary total rating is to aid the appellant during the immediate post-surgical period when he or she may have incompletely healed wounds or may be wheelchair-bound, or when there may be similar circumstances indicative of transient incapacitation associated with recuperation from the immediate effects of an operation. 38 C.F.R. § 4.30. The inability to return to any employment would, in fact, show a need for continuing convalescence under § 4.30. Seals v. Brown, 8 Vet. App. 291 (1995).

Upon review of the medical evidence, the Board finds that an extension of the temporary 100 percent disability rating under 38 C.F.R. § 4.30 is not warranted. As noted above, in March 2016 the Veteran was medically cleared to return to work with certain restrictions. Both the Veteran and her surgeon felt that she could return to work at that time. The evidence indicates that at some time thereafter, the Veteran reinjured her left shoulder. In July 2016, the Veteran reported that she was unable to return to work and in August 2016 she described a recurrence or flare-up of her left shoulder symptoms. An MRI showed a new tear of the left shoulder rotator cuff. There is no lay or medical evidence to indicate that the left shoulder rotator cuff tear diagnosed in August 2016 was an ongoing issue due to the November 2015 surgery. Indeed, the lay evidence indicates a flare of the left shoulder symptoms, suggesting an intercurrent cause of the rotator cuff tear. Such a conclusion is supported by the medical evidence of record noting a recurrent rotator cuff tear with additional delamination, rather than an ongoing issue related to the November 2015 surgery. The MRI showed that the November 2015 efforts to repair the shoulder had not failed and the medical evidence indicated a new injury. Again, the Veteran and her surgeon found her to be cleared to return to work in March 2016 and it was several months later that the Veteran reported an increase in left shoulder symptoms resulting from a new tear to the left rotator cuff. 

The provisions of 38 C.F.R. § 4.30 essentially provide compensation for the temporary disability caused by a surgical procedure with recognition that the overall disability rating should be re-evaluated after stabilization. The section is not intended to be used for a reinjury incurred months following the surgery, after the Veteran has stabilized, and that it is unrelated to the surgical procedure that originally necessitated the temporary total disability rating. As will be discussed in greater detail below, the Veteran is in receipt of a 20 percent rating for her left shoulder disability from April 1, 2016, to November 29, 2016, and from September 1, 2017, based on her symptomatology reported during those time periods. 

As explained above, the medical evidence does not support a finding that the requirements under 38 C.F.R. § 4.30 were met from April 1, 2016, to December 29, 2016, at which point the Veteran is in receipt of another temporary total disability rating based on an additional left shoulder surgery. Indeed, there is evidence to the contrary. Again, the medical evidence would have to show severe postoperative residuals such as incompletely healed surgical wounds, therapeutic immobilization of one major joint or more, application of a body cast, or the necessity for house confinement, or the necessity for continued use of a wheelchair or crutches (with full weight bearing forbidden) or immobilization by cast, without surgery, of one major joint or more. None of these factors were present in the Veteran’s case from April 1, 2016, to December 29, 2016. The Veteran’s surgical wounds were healing well. Range of motion testing continued to show decreased motion, but muscle strength and sensation were within normal limits. 

Based upon the medical and lay evidence of record, the Board finds that the preponderance of the evidence is against a finding of any basis to extend the Veteran’s convalescence period beyond the period already granted following the November 2015 surgery. It does not appear that any of the criteria cited in § 4.30 were satisfied as of April 1, 2016, with respect to the November 2015 surgery. Instead, the medical evidence overwhelmingly supports the finding that the Veteran’s left shoulder was “stable” as of April 1, 2016, to the point that post-surgical convalescence could be considered complete. She was medically permitted to return to work from that point with certain restrictions. At some point in the months thereafter she reinjured the left shoulder, which ultimately led to another surgery on November 29, 2016. Such an injury had not been medically linked to the November 2015 surgery or convalescence thereto. There is no doubt of material fact to be resolved in the Veteran’s favor. 38 U.S.C. § 5107(b). The Board, therefore, finds that an extension of a temporary total convalescent rating under the provisions of 38 C.F.R. 4.30 from April 1, 2016, to December 29, 2016, is not warranted.

2. Entitlement to an increased rating greater than 20 percent for left shoulder degenerative arthritis, status post surgery

Disability evaluations are determined by evaluating the extent to which a veteran’s service-connected disability adversely affects his or her ability to function under the ordinary conditions of daily life, including employment, by comparing his or her symptomatology with the criteria set forth in the Schedule for Rating Disabilities. The percentage ratings represent as far as can practicably be determined the average impairment in earning capacity resulting from such diseases and injuries and the residual conditions in civilian occupations. Generally, the degree of disabilities specified are considered adequate to compensate for considerable loss of working time from exacerbation or illness proportionate to the severity of the several grades of disability. 38 U.S.C. § 1155 (2012); 38 C.F.R. § 4.1 (2018). Separate DCs identify the various disabilities and the criteria for specific ratings. If two disability evaluations are potentially applicable, the higher evaluation will be assigned to the disability picture that more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2018). Any reasonable doubt regarding the degree of disability will be resolved in favor of the Veteran. 38 C.F.R. § 4.3 (2018).

The Veteran’s entire history is reviewed when making a disability determination. See 38 C.F.R. § 4.1 (2018). VA must consider whether the Veteran is entitled to “staged” ratings to compensate when his or her disability may have been more severe than at other times during the course of his or her appeal.

The evaluation of the same disability under various diagnoses, known as pyramiding, is generally to be avoided. 38 C.F.R. § 4.14 (2018). The critical element in permitting the assignment of several ratings under various DCs is that none of the symptomatology for any one of the disabilities is duplicative or overlapping with the symptomatology of the other disability. See Esteban v. Brown, 6 Vet. App. 259, 261-62 (1994).

In general, evaluation of a service-connected disability involving a joint rated on limitation of motion requires adequate consideration of functional loss due to pain under 38 C.F.R. § 4.40 and functional loss due to weakness, fatigability, incoordination or pain on movement of a joint under 38 C.F.R. § 4.45. See DeLuca v. Brown, 8 Vet. App. 202 (1995). The provisions of 38 C.F.R. § 4.40 state that disability of the musculoskeletal system is primarily the inability, due to damage or inflammation in parts of the system, to perform normal working movements of the body with normal excursion, strength, speed, coordination and endurance. Functional loss may be due to the absence of part, or all, of the necessary bones, joints and muscles, or associated structures. It may also be due to pain supported by adequate pathology and evidenced by visible behavior of the claimant undertaking the motion. See 38 C.F.R. § 4.40. The factors of disability affecting joints are reduction of normal excursion of movements in different planes, weakened movement, excess fatigability, swelling and pain on movement. See 38 C.F.R. § 4.45.

The Veteran’s arthritis of the shoulder is rated as analogous to degenerative arthritis (DC 5003) and limitation of motion of the arm (DC 5201). 38 C.F.R. § 4.71a, DCs 5003, 5201 (2018). The Veteran contends that her current 20 percent disability rating does not accurately reflect the severity of her condition. As noted above, the Veteran is in receipt of temporary total disability ratings for the periods from November 18, 2015, to April 1, 2016, and from November 29, 2016, to September 1, 2017. As these are the maximum ratings available for those time periods, the Board’s analysis will focus on the propriety of an increased rating for the remaining periods on appeal.

DC 5003 states that the severity of degenerative arthritis, established by X-ray findings, is to be rated on the basis of limitation of motion under the appropriate DC for the specific joint or joints affected, which in this case would be DC 5201 (limitation of motion of the arm). If the limitation of motion is not sufficient for a compensable rating under the appropriate DCs, a rating of 10 percent is for application for each such major joint or group of minor joints affected by limitation of motion, to be combined, not added under DC 5003. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. In the absence of limitation of motion, a 20 percent rating may be assigned with x-ray evidence of involvement of 2 or more major joints or 2 or more minor joint groups, with occasional incapacitating exacerbations. A 10 percent rating is warranted with x-ray evidence of involvement of 2 or more major joints or 2 or more minor joint groups. Id.

A veteran’s disability is rated at 20 percent disabling, under DC 5201, if it limits the motion of the arm at shoulder level. If the Veteran’s disability results in greater limitation of motion of the arm, the ratings depend on whether the disability affects the Veteran’s dominant or minor side. Dominant side disabilities, as is the case here, under DC 5201, are rated 30 percent for limitation of the arm midway between side and shoulder level and 40 percent for limitation of the arm to 25 degrees from the side. 38 C.F.R. § 4.71a, DC 5201 (2018).

The regulations define normal range of motion for the shoulder as forward flexion from zero to 180 degrees, abduction from zero to 180 degrees, external rotation to 90 degrees, and internal rotation to 90 degrees. 38 C.F.R. § 4.71, Plate I (2018). With forward elevation (flexion) and abduction, range of motion for the arm is from the side of the body (zero degrees) to above the head (180 degrees) with the mid-point of 90 degrees where the arm is held straight out from the shoulder. Id. With external rotation, range of motion for the arm is from the shoulder level (zero degrees) to in line with the side of the head (90 degrees). Id. With internal rotation, range of motion for the arm is from the shoulder level (zero degrees) to in line with the side of the torso (90 degrees). Id.

From this evidence, the Board concludes that the Veteran is not entitled to a rating greater than 20 percent. A rating greater than 20 percent is unavailable under DC 5003, as the 20 percent rating is the highest available rating. An alternative higher rating under DC 5201 is not warranted as the Veteran has forward flexion and abduction to at least 85 degrees of flexion and 90 degrees of abduction, even accounting for pain. Under DC 5201, a 20 percent rating is warranted for each of the minor and major limbs where there is arm limitation at shoulder level. A 30 percent rating is warranted only where there is limitation of motion to midway between the side and shoulder level. As shoulder level would be 90 degrees, midway to shoulder level would be at 45 degrees. Even accounting for pain, the Veteran’s range of motion consistently has been to at least 85 degrees in both abduction and flexion. As such, a 30 percent rating for the left shoulder disability is not warranted under DC 5201. 

The Board also has considered whether separate or higher ratings are warranted. In this case, no higher or separate rating under a different DC can be applied. The Board notes that there are other DCs relating to shoulder disorders, such as DC 5200 (ankylosis of the shoulder) and DC 5202 (impairment of the humerus). However, the Veteran’s left shoulder disability is not manifested by an impairment of the humerus, and therefore DC 5202 is inapplicable. Ankylosis is “immobility and consolidation of a joint due to disease, injury, surgical procedure.” Lewis v. Derwinski, 3 Vet. App. 259 (1992) (citing Saunders Encyclopedia and Dictionary of Medicine, Nursing, and Allied Health at 68 (4th ed. 1987)). The Veteran is able to move her left shoulder, albeit with pain, so it is clearly not ankylosed. In addition, the Board has considered the applicability of separate ratings for the under DC 5203; however, the Veteran does not have evidence of clavicle or scapular problems due to her service-connected left shoulder disability. 

The Board notes that the Veteran does not have any muscle atrophy associated with the left shoulder disability. As such, assigning separate or higher ratings under 38 C.F.R. § 4.73, DCs 5301 through 5306 is not warranted.

Finally, the Board has considered the Veteran’s left shoulder scars associated with her multiple surgeries. The records, however, clearly demonstrate that the Veteran has no residuals or symptomatology for which a separate rating is warranted for the left shoulder scars under the applicable DCs. See 38 C.F.R. § 7800 through 7805.

The Board notes that the Veteran’s functional loss was considered. 38 C.F.R. §§ 4.40, 4.45. The evidence of record indicates that the Veteran has difficulty with activities requiring reaching over her head and/or heavy lifting. That said, there is no muscle atrophy associated with the left shoulder, indicating that the Veteran can and does use the shoulder in close to a normal manner. In addition, the records show left shoulder ranges of motion loss that falls well short of being midway between the side and shoulder level, even when taking into account additional limitation resulting from pain. The Veteran herself has not described such a limitation of motion, even during flare-ups of disability. See Deluca, 8 Vet. App. at 202. Accordingly, the Veteran’s functional loss does not warrant a rating greater than 20 percent. As discussed above, this disabling affect is already contemplated and compensated by the current rating. 

(Continued on the next page)

 

As shown above, and as required by Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991), the Board has considered all potentially applicable provisions of 38 C.F.R. Parts 3 and 4, whether or not they have been raised by the Veteran. In this case, the Board finds no provision upon which to assign a rating greater than 20 percent for the Veteran’s left shoulder disability.

 

J.W. FRANCIS

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD C. J. Houbeck, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.